CLARK HILL PLLC
PAOLA M. ARMENI
Nevada Bar No. 8357
Email: parmeni@clarkhill.com
GIA N. MARINA
Nevada Bar No. 15276
Email: gmarina@clarkhill.com
3800 Howard Hughes Pkwy., #500
Las Vegas, Nevada 89169
Tel:  (702) 862-8300
Fax: (702) 862-8400
*Attorneys for Plaintiffs Rhodney Henderson*
*and Sundra Henderson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RHODNEY HENDERSON, individually; SUNDRA HENDERSON, individually<br><br>Plaintiffs,<br><br>vs.<br><br>ARIA RESORT & CASINO HOLDINGS, LLC, a Domestic Limited-Liability Company; DOES I-X; and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW Rhodney Henderson and Sundra Henderson (collectively "Plaintiffs"), by and through their counsel, Paola M. Armeni, Esq. and Gia N. Marina, Esq. of the law firm of Clark Hill PLLC, and hereby complain and allege against Defendant Aria Resort & Casino Holdings, LLC ("Defendant") DOES and ROE defendants as follows:

## I.

## THE PARTIES

1.      Plaintiff Rhodney Henderson is, and was at all times relevant herein, a resident of the State of California.

ClarkHill\J2288\401792\262085576.v1-2/13/21

2. Plaintiff Sundra Henderson is, and was at all times relevant herein, a resident of the State of California.

3. Defendant Aria Resort and Casino Holdings, LLC is, and was at all times relevant herein, a domestic limited liability company conducting business in Clark County, Nevada.

4. Upon information and belief, Defendants, DOES I-X were employees, directors, agents, and/or contractors employed by Aria Resort and Casino Holdings, LLC in their capacity as security guards, who had direct interaction with the Plaintiffs causing the basis for the below claims. The Plaintiffs will seek leave of this court to insert the true names and capacities of such Defendants when the same have been ascertained and will further seek leave of the court to join said Defendants in these proceedings.

5. DOES I-X and ROE Entities I-X are parties whose true names and capacities, whether individual, corporate, associate, trust/trustee or otherwise, are currently unknown to Plaintiffs. Said DOE and ROE Defendants are responsible for causing the damages suffered by Plaintiffs and/or otherwise acted in concert or conspiracy with each other, whether directly or indirectly, to cause the events giving rise to this Complaint, and are proper parties to this action. Plaintiffs will amend this Complaint to include the true names and capacities of such DOE and ROE defendants as the same are ascertained.

## II.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and § 1343(a)(4). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred within the State of Nevada, County of Clark.

8. This Complaint is timely filed within the applicable statute of limitations period.

9. The Plaintiffs hereby demand a trial of their action by jury.

ClarkHill\J2288\401792\262085576.v1-2/13/21

## III.

## GENERAL ALLEGATIONS

10.    Mr. Rhodney Henderson is a fifty-eight-year-old African American man who served in the United States Navy, owned a construction business for many years and is currently an equipment operator.  He lives in Berkley, California with his wife, Sundra Henderson.

11.    Mrs. Sundra Henderson is a homemaker and small business owner.

12.    Mr. and Mrs. Henderson have three adult children and have been married for over three decades.

13.    Mr. and Mrs. Henderson are M Life members who regularly stayed at Aria Resort and Casino Holdings, LLC (hereinafter "ARIA") property and/or other M Life properties.

14.    In late June of 2019, Plaintiffs checked in to the ARIA using a reservation Mrs. Henderson had made as an M Life rewards member. Plaintiffs chose the Hotel over other local options because it was a M Life franchise hotel.

15.    Plaintiffs were reserving a room at the Hotel for the purpose of celebrating their thirty-fourth (34th) wedding anniversary.

16.    The room at the Hotel was booked under Sundra Henderson's name. Upon arrival at the Hotel on June 27, 2019, Rhodney Henderson was added to the hotel reservation in order to obtain a key.

17.    Plaintiffs had a reservation for a four night stay at the Hotel.

18.    On the last night of their trip, Plaintiffs went downstairs at ARIA for a snack.

19.    After obtaining something to eat, Mrs. Henderson went back upstairs to their Hotel room while Mr. Henderson stayed downstairs at ARIA to play the slot machines.

20.    Mr. Henderson went to the restroom and mistakenly left his phone at a slot machine. When Mr. Henderson returned, his phone was missing.

21.    Mr. Henderson asked a nearby white couple about his missing phone and whether they happened to see anything happen to it when he was gone. The white couple's reaction seemed suspicious as they patted themselves down, dug through a purse and continued to stare at Mr. Henderson. Mr. Henderson walked away and continued to gamble.  When he noticed the

ClarkHill\J2288\401792\262085576.v1-2/13/21

couple staring and making gestures, he approached them to tell them it wasn't a big a deal, he just wanted his phone back. The white couple's reaction was similar to the first time.

22. Mr. Henderson approached ARIA security to advise them of his missing phone.

23. Upon coming back to the area of the slot machines with a female security guard, the guard advised Mr. Henderson to check the office to see if anyone turned in his phone.

24. Upon information and belief, upon walking to the security office, a male security guard with dark hair and of average height approached Mr. Henderson and the female guard.

25. The approaching security guard (DOE I) accused Mr. Henderson of threatening a white couple on the casino floor and inquired whether Mr. Henderson was a member at the hotel.

26. DOE I asked Mr. Henderson for his ID. Mr. Henderson asked him why. Mr. Henderson advised he was a member at the hotel.

27. The male security guard thereafter told Mr. Henderson to leave the premises because he "could be lying" and protested that they "had him on camera."

28. The security guard then asked Mr. Henderson if he was staying at the ARIA and what was his room number. Mr. Henderson answered in the affirmative that he was staying at ARIA but could not remember his room number, so he provided his name.

29. At this time, the female security guard stepped away while the male security guard continued to berate Mr. Henderson, including saying he would trespass Mr. Henderson.

30. Upon information and belief, other security guards arrived. (DOES II-V)

31. One of the security guards grabbed Mr. Henderson's arm and tried to twist it behind Mr. Henderson's back.

32. As Mr. Henderson never received a warning or any direction to put his hands behind his back, his body tensed when the security guard grabbed his arm.

33. Upon information and belief, approximately four to five security guards immediately attacked Rhodney and took him to the ground.

34. Mr. Henderson believes he lost consciousness.

35. Mr. Henderson was handcuffed and held at a holding facility for hours.

ClarkHill\J2288\401792\262085576.v1-2/13/21

36. While at the holding facility, still handcuffed, a security guard that identified himself as a supervisor repeatedly tried to get Mr. Henderson to admit he did something wrong. Further, Mr. Henderson was denied use of the telephone, even when he protested that he would like to call his attorney.

37. A LVMPD officer arrived to issue Mr. Henderson a citation for trespassing and disorderly conduct.

38. After hours of sitting in the holding facility Mr. Henderson's handcuffs were removed.

39. Approximately fifteen (15) minutes after removing Mr. Henderson's handcuffs, he was escorted to his Hotel room by several security guards and an officer.

40. Upon arrival to the Hotel room, Mrs. Henderson inquired what happened and a security guard responded something to the effect of "your husband knows" and instructed her to pack her things as quickly as possible instructing her to just "throw it all in the bag."

41. Security guards would not allow Mrs. Henderson to shut the door of the Hotel room in order to pack her belongings in privacy. People continued to walk by the door looking in the room as the guards told Mrs. Henderson she was also being trespassed from the property.

42. Mrs. Henderson asked for permission to have more time to pack their belongings. Security denied her request and impatiently stood in the doorway of the Henderson's Hotel room with the door open while Mrs. Henderson frantically gathered all their belongings.

43. Upon exiting the room, a male security guard advised Mr. and Mrs. Henderson that "it could get worse" and to "just leave and don't come back."

44. Mrs. Henderson was escorted to the check out area of the Hotel by a security guard at the same time that Mr. Henderson was escorted to valet where his vehicle was parked.

45. Security guards awaited Mr. and Mrs. Henderson getting into their vehicle and physically driving away from the ARIA.

46. As a result of the physical assault by ARIA security guards, Mr. Henderson suffered severe medical conditions.

ClarkHill\J2288\401792\262085576.v1-2/13/21

47.     As a result of the interaction with Mrs. Henderson she suffered humiliation and embarrassment.

48.     Defendants, their agents and/or employees did not ask any other person on the Hotel casino floor to provide identification or ask whether they were members of the Hotel.

49.     The only difference between the Hendersons and the other guests was the color of their skin.

50.     Defendants, their agents and/or employees treated Plaintiffs differently from other guests and invitees in a place of public accommodation because of their race. Defendants denied the Hendersons the use and enjoyment of the benefits, privileges, terms and conditions of contracts that they extend to other similarly situated guests who are not African-American.

51.     Defendants, their agents and/or employees breached their contracts with the Hendersons by interfering with their enjoyment of guest facilities made available to all other hotel guests, because of their race. Defendants denied the Hendersons the use and enjoyment of the same accommodations, privileges, and benefits that it grants to other similarly situated hotel guests and invitees who are not African-American.

52.     As a result of the Defendants' unlawful actions described above, Plaintiffs have suffered, continue to suffer, and will in the future suffer irreparable loss and injury, including but not limited to economic loss, humiliation, embarrassment, emotional distress, feelings of racial stigmatization, an increased sense of vulnerability, and unlawful deprivation of their state and federally protected rights to exercise and enjoy equal treatment in the making and enforcing of contacts in places of public accommodation and having full access to and enjoyment of places of public accommodation without regard for race and/or color.

53.     This was not an isolated incident. There is a history of similar incidents involving African-American guests and invitees at ARIA and MGM franchise hotels throughout the United States[1], continuing up to and indeed beyond the time of the Henderson's incident. ARIA's

---

[1] For example, the EEOC settled a race discrimination lawsuit against The Mirage Hotel in Las Vegas, Nevada in Case No. CV S-02-1554 RLH – LRL wherein The Mirage was discriminating against African-Americans and Hispanics.

ClarkHill\J2288\401792\262085576.v1-2/13/21

employees, agents and apparent agents use security guards to challenge and remove African-American guests from Hotel properties. Similarly situated white guests and invitees on Hotel properties were not treated in a similar manner.

54. Upon information and belief, similar incidents involving Defendant ARIA have occurred elsewhere across the county.

## FIRST CLAIM FOR RELIEF

### (Unlawful Discrimination on behalf of Plaintiffs Collectively – 42 U.S.C. § 1981)

55. Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

56. Plaintiff Rhodney Henderson is an African-American man and is therefore a member of a protected class under 42 U.S.C. § 1981.

57. Plaintiff Sundra Henderson in an African-American woman and is therefore a member of a protected class under 42 U.S.C. § 1981.

58. Plaintiffs booked a reservation with Defendant ARIA for arrival on June 27, 2019 and a departure on  July 1, 2019. In so doing, Plaintiffs entered into a contract with Defendant ARIA whereby in consideration of the contract price paid, Defendant ARIA agreed to provide Plaintiffs with public accommodation that included the right to peacefully use and enjoy the common areas of the Hotel during Plaintiffs' stay.

59. Plaintiffs met the Hotel's standard requirements for occupancy. They were able and willing to pay the contract price for the lodging and did nothing disruptive that would have warranted their removal from the Hotel. Indeed, Plaintiff Rhodney Henderson was calmly attempting to regain possession of his telephone when Defendant security guards accosted Plaintiff and advised him that he did not belong on the premises. They demanded proof that Mr. Henderson was a hotel guest yet did not demand the same proof from the white couple.

60. Similarly, Mrs. Henderson was trespassed from the property without even an allegation of wrongdoing, being present for any alleged wrongdoing and despite the Hotel room being in her name.

ClarkHill\J2288\401792\262085576.v1-2/13/21

61. Defendant ARIA security guards (DOES I-V) did not accost or advise any of the white individuals present on the Hotel's casino floor that they did not belong on the premises. Thus, but for the Plaintiffs' race, this wrongful action would not have occurred.

62. By accosting Plaintiff and advising him that he needed to leave the premises, Defendant Security Guards (DOES I-V) deprived Plaintiff the accommodation they provided to white guests. Specifically, Defendants denied Plaintiff the right to peacefully use and enjoy the common areas of the Hotel.

63. By forcing Plaintiff Sundra to leave the premises and treating her as though she had been a participant in wrongdoing and denying her the right to pack her belongings in a timely and organized fashion, Defendant Security Guards (DOES I-V) deprived Plaintiff the accommodation they provided to white guests. Specifically, Defendants denied Plaintiff the right to peacefully use and enjoy the Hotel room contracted for with ARIA in exchange for consideration (payment).

64. By discriminating against Plaintiffs based on race, Defendants have denied Plaintiffs the same right to enjoy the benefits, privileges, terms and conditions of contract as is, and was, enjoyed by white citizens, in violation of Plaintiffs' rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

65. Defendant ARIA and/or DOE or ROE Defendants hired Defendant security guards to provide security services for the ARIA. As such, security guards were always relevant herein the agent or employee of Defendant ARIA. At all times relevant, Defendant security guards acted within the course and scope of its employment with Defendant ARIA. At all times relevant, Defendant ARIA maintained an unconstitutional policy or custom of profiling African-American individuals who were present on the casino floor of its Hotel. Accordingly, Defendant ARIA is directly liable for the unconstitutional acts and omissions of Defendant security guards, who profiled Plaintiffs in accordance with that unconstitutional policy or custom. Additionally, to the extent that Defendant ARIA is not directly liable for the unconstitutional and tortious acts and omissions of Defendant security guards, they are vicariously liable under a theory of respondeat superior.

ClarkHill\J2288\401792\262085576.v1-2/13/21

66. Defendant ARIA's unconstitutional policy and custom of profiling African-American guests on the Hotel premises was the moving force behind Defendant security guards' unconstitutional and tortious conduct as set forth herein.

67. As a direct and proximate result of the unconstitutional and tortious conduct set forth in this Count, Mr. Henderson suffered severe mental anguish and emotional harm as well as physical medical conditions.

68. As a direct and proximate result of the unconstitutional and tortious conduct set forth in this Count, Mrs. Henderson suffered severe mental anguish and emotional harm.

**SECOND CLAIM FOR RELIEF**

**(Unlawful Discrimination on behalf of Plaintiffs Collectively – 42 U.S.C. § 2000(a))**

69. Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

70. Plaintiff Rhodney Henderson is an African-American man and is therefore a member of a protected class under 42 U.S.C. § 1981.

71. Plaintiff Sundra Henderson is an African-American woman and is therefore a member of a protected class under § 1981.

72. At all relevant times, Defendant ARIA is and was an "inn, hotel, motel, or other establishment which provides lodging to transient guests" within the meaning of 42 U.S.C. § 2000(a)(b)(1). Defendant ARIA's operations affect commerce.

73. At all times relevant, Plaintiffs were transient guests within the meaning of 42 U.S.C. § 2000(a)(b)(1).

74. Plaintiffs booked a reservation with Defendant ARIA for arrival on June 27, 2019 and a departure on July 1, 2019. On June 30, 2019, the last night of their stay at ARIA, Plaintiff Rhodney Henderson entered the casino floor to play slot machines.

75. By using the slot machines, Plaintiff attempted to exercise the right to full benefits and enjoyment of a place of public accommodation (i.e. the Hotel's downstairs entertainment).

76. Plaintiff was treated less favorably than similarly situated persons who were not members of the protected class. Specifically, Plaintiff was accosted and told he needed to leave

ClarkHill\J2288\401792\262085576.v1-2/13/21

the premises of the Hotel by Defendant security guards. Defendant security guards did not accost or advise any of the white individuals present on the Hotel's casino floor that they needed to leave the premises. The only differentiating factor between the white individuals and Plaintiff was that Plaintiff was an African-American.

77.   By accosting Plaintiff and advising him that he needed to leave the premises, Defendants denied Plaintiff of the benefits and enjoyment of the place of accommodation (i.e. the Hotel's downstairs entertainment). Specifically, Defendants denied Plaintiff the right to peacefully use and enjoy the common areas of the Hotel.

78.   Plaintiff Sundra Henderson attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, indeed, the Hotel room she had the right to stay in based on the contract entered into with Defendant ARIA.

79.   Plaintiff was treated less favorably than similarly situated persons who were not members of the protected class. Specifically, Plaintiff was mortified as she was forced to pack her and her husband's private belongings as quickly as possible and in front of other passerby guests while security forcefully advised her she was being trespassed from the property as well, despite the Hotel room being in her name and her not being present for any part of the above-described incident involving her husband, Mr. Henderson.

80.   In addition, Defendant security guards refused to advise Mrs. Henderson why she was being trespassed from the property and simply told her "your husband knows" and making open threats stating, "it could get worse."

81.   By verbally threatening Mrs. Henderson and forcing her to pack her private belongings in front of an audience of other guests at the Hotel, Defendants denied Plaintiff the right to peacefully use and enjoy the Hotel room she had paid for.

82.   Defendant ARIA and/or DOE or ROE Defendants hired Defendant security guards to provide security services for the ARIA. As such, security guards were at all times relevant herein the agent or employee of Defendant ARIA. At all times relevant, Defendant security guards acted within the course and scope of its employment with Defendant ARIA. At all times relevant, Defendant ARIA maintained an unconstitutional policy or custom of profiling

ClarkHill\J2288\401792\262085576.v1-2/13/21

African-American individuals who were present on the casino floor of its Hotel. Accordingly, Defendant ARIA is directly liable for the unconstitutional acts and omissions of Defendant security guards, who profiled Plaintiff in accordance with that unconstitutional policy or custom. Additionally, to the extent that Defendant ARIA is not directly liable for the unconstitutional and tortious acts and omissions of Defendant security guards, they are vicariously liable under a theory of respondeat superior.

83.     Defendant ARIA's unconstitutional policy and custom of profiling African-American guests on the Hotel premises was the moving force behind Defendant security guards' unconstitutional and tortious conduct as set forth herein.

84.     By denying Plaintiff the full use and equal enjoyment of the services of a place of public accommodation on the basis of his race, Defendants have violated 42 U.S.C. § 2000(a).

### THIRD CLAIM FOR RELIEF

### (Conspiracy on behalf of Plaintiffs Collectively – 42 U.S.C. § 1985(3))

85.     Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

86.     Throughout the time encompassing the allegations of this Complaint, Defendants conspired and/or acted in concert, either directly or indirectly, to deny Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws motivated by racial animus.

87.     In furtherance of this goal, Defendants assaulted, coerced, battered and caused physical and emotional injury to Plaintiff Rhodney Henderson.

88.     Additionally, Defendants accomplished their goal by verbally assaulting, humiliating and trespassing Plaintiff Sundra Henderson.

89.     As a direct and proximate result of the above-mentioned unconstitutional and illegal acts of Defendants, Plaintiff Rhodney Henderson sustained prolonged, depression, embarrassment, anxiety, severe mental or physical pain and/or anguish of mind; incurred substantial medical and mental expenses; and was prevented from transacting his usual business and/or enjoyment.

ClarkHill\J2288\401792\262085576.v1-2/13/21

90. That as a direct and proximate result of the above-mentioned unconstitutional acts of Defendants, Plaintiff sustained residual physical and/or psychological depression and/or disabilities, severe mental and emotional pain, special damages including lost wages, lost earning capacity, in sums exceeding $50,000.00 in amount.

## FOURTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress on behalf of Plaintiffs Collectively)

91. Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

92. As set forth above, the actions of the Defendants, their agents and/or employees, throughout their interaction with the Plaintiffs constituted extreme and outrageous conduct.

93. The Defendants, their agents and/or employees, intended or acted with reckless disregard, in causing severe emotional distress to the Plaintiffs.

94. The actions of the Defendants, their agents and/or employees, directly and proximately caused the Plaintiffs severe emotional distress. The Plaintiffs suffered, and continue to suffer, severe and extreme emotional distress and physical manifestations thereof.

95. As a direct and proximate result of the actions of the Defendants, their agents and/or employees, the Plaintiffs sustained mental and physical injuries and other damages.

96. As a direct and proximate result of the actions of the Defendants, their agents and/or employees, the Plaintiffs have been damaged in an amount in excess of $10,000.00.

97. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs have been forced to retain the services of an attorney for the protection of their interests. Plaintiffs therefore seek recovery of their attorneys' fees and costs to the full extent permitted under Nevada law.

## FIFTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress on behalf of Plaintiffs Collectively)

98. Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

99.    The actions of the Defendants, their agents and/or employees, throughout their interactions with the Plaintiffs constituted extreme and outrageous conduct.

100.    The Defendants, their agents and/or employees, negligently caused emotional distress to the Plaintiffs.

101.    The actions of the Defendants, their agents and/or employees, directly and proximately caused the Plaintiffs emotional distress. The Plaintiffs suffered, and continues to suffer, emotional distress and physical manifestations thereof.

102.    As a direct and proximate result of the actions of the Defendants, their agents and/or employees, the Plaintiffs have been damages in an amount in excess of $10,000.00.

103.    The actions of the Defendants have forced the Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of this suit.

## SIXTH CLAIM FOR RELIEF

### (False Imprisonment on behalf of Plaintiff Rhodney Henderson)

104.    Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

105.    The actions of the Defendants, their agents and/or employees, constituted imprisonment and denial or restraint of the Plaintiff's liberty under the threatened and probable imminence of force, against the Plaintiff's will and without his consent.

106.    The actions of the Defendants, their agents and/or employees, were committed with the intent to detain and imprison the Plaintiff against his will and without his consent.

107.    The Defendants, their agents and/or employees, committed the above-referenced offenses against the Plaintiff without any legal cause or justification, and with actual malice and oppression toward the Plaintiff.

108.    Throughout their interactions with the Plaintiff, the Defendants, their agents and/or employees, deliberately used words, gestures, and the like which were intended to induce, and in fact induced a reasonable fear and apprehension in the Plaintiff that force will be used upon his person if the Plaintiff attempts to leave the confinement. Such words and actions

ClarkHill\J2288\401792\262085576.v1-2/13/21

operated upon the will of the Plaintiff as to result in a reasonable fear of personal difficulty and personal injuries.

109.    As a direct and proximate result of the actions of the Defendants, their agents and/or employees, the Plaintiff sustained mental and physical injuries and other damages.

110.    As a direct and proximate result of the actions of the Defendants, their agents and/or employees, the Plaintiff has been damaged in an amount in excess of $10,000.00 according to proof.

111.    The Defendants, their agents and/or employees, by their actions are guilty of oppression, fraud or malice; therefore, the Plaintiff is entitled to punitive damages in an amount in excess of $10,000.00.

112.    As a direct and proximate result of Defendants' conduct, Plaintiff has been forced to retain the services of an attorney for the protection of his interests. Plaintiff therefore seeks recovery of his attorneys' fees and costs to the full extent permitted under Nevada law.

### SEVENTH CLAIM FOR RELIEF

### (Battery on behalf of Plaintiff Rhodney Henderson)

113.    Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

114.    Defendants, their agents and/or employees, intended to cause and did cause harmful and offensive, contact with Plaintiff Rhodney Henderson's person when Defendant security guards accosted him, put him in handcuffs, and brutally handled him causing extensive bruising and other medical injuries.

115.    Plaintiff did not consent to Defendants' acts.

116.    As a direct and proximate result of the aforesaid Battery by said Defendants, the Plaintiff was injured, receiving injuries to his left elbow, chest wall, left arm, and other injuries to the tissue and joints of his body. Plaintiff thereby experienced great pain, and anxiety to his body and mind, sustaining injuries and damages in the sum in excess of $10,000.00.

117.    As a further direct and proximate result of the aforesaid Battery by said Defendants, Plaintiff has incurred damages, both general and special, including medical expenses

as a result of the necessary treatment of his injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries he has suffered, in a sum in excess of $10,000.00.

118.    As a further and proximate result of the aforesaid Battery by said Defendants, the Plaintiff was required to, and did, employ physicians and other health care providers to examine, treat, and care for him and did incur medical and incidental expenses thereby. The exact amount of such expenses is unknown at this present time, but Plaintiff alleged that he has suffered special damages in excess of $10,000.00.

119.    As a further direct and proximate result of this Battery, Plaintiff has sustained general damages in a sum in excess of $10,000.00, in an amount to be determined at trial.

120.    The actions of the Defendants, as complained of in this claim for relief were undertaken knowingly, wantonly, willfully, and maliciously with the intent to physically harm and frighten Plaintiff. Accordingly, Plaintiff is entitled to exemplary and punitive damages pursuant to NRS 42.005.

121.     Additionally, due to injuries sustained due to Defendants' actions, Plaintiff was unable to work to his full capacity, causing loss of income.

122.    The actions of the Defendants have forced the Plaintiff to retain counsel to represent him in the prosecution of this action, and he is therefore entitled to an award of a reasonable amount as attorney's fees and costs of this suit.

**EIGHTH CLAIM FOR RELIEF**

**(Negligence on behalf of Plaintiffs Collectively)**

123.    Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

124.    The Defendants, their agents and/or employees, were obligated to act reasonably and to exercise due care toward the Plaintiffs as to avoid injury or damages to the Plaintiffs.

ClarkHill\J2288\401792\262085576.v1-2/13/21

125.    The Defendants, their agents and/or employees, were negligent and breached their duty of care toward the Plaintiffs.

126.    As a direct and proximate result of the negligence of the Defendants, their agents and/or employees, the Plaintiffs have been damages in an amount in excess of $10,000.00.

127.    The actions of the Defendants have forced the Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of this suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Enter a declaratory judgment finding that the foregoing actions of the Defendants violate the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 42 U.S.C. § 2000(a);

2.    Enter injunctive relief forbidding Defendants from requiring African-American guests and invitees, based solely on their race, to prove they have a right to enjoy the use of hotel facilities and enjoy the benefits, privileges, terms, and conditions of contract, as is enjoyed by white guests and invitees;

3.    Award compensatory damages to Plaintiffs in an amount to be determined by a jury that would fully compensate Plaintiff for physical injury, economic loss, humiliation, embarrassment and emotional distress caused by Defendants' unconstitutional and tortious conduct as set forth in Counts I-III.

4.    Award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future.

5.    Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

/ / /

/ / /

/ / /

/ / /

ClarkHill\J2288\401792\262085576.v1-2/13/21

6.    For pre-judgment and post-judgment interest on all sums according to law; and

7.    For such other and further relief as this Court deems just and proper.

DATED this 19th day of February 2021.

**CLARK HILL PLLC**

  /s/ Paola M. Armeni, Esq.
Paola M. Armeni, Esq.
Nevada Bar No. 8357
Gia N. Marina, Esq.
Nevada Bar No. 15276
3800 Howard Hughes Pkwy., #500
Las Vegas, Nevada 89169
*Attorneys for Plaintiffs Rhodney Henderson*
*and Sundra Henderson*

ClarkHill\J2288\401792\262085576.v1-2/13/21