# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Rhodney Henderson and Sundra Henderson,<br><br>    Plaintiffs<br><br>v.<br><br>Aria Resort & Casino Holdings, LLC, et al.,<br><br>    Defendants | Case No.: 2:21-cv-0280-JAD-NJK<br><br>**Order Granting in Part and<br>Denying in Part Motion to Dismiss**<br><br>[ECF No. 45] |

Rhodney and Sundra Henderson bring this racial-discrimination lawsuit against Aria Resort & Casino Holdings, LLC and five of its security personnel, alleging that they were falsely imprisoned and wrongfully trespassed from the resort because they are Black. The defendants move to dismiss some of the Hendersons' claims, arguing that this court lacks subject-matter jurisdiction over the discrimination claims; Rhodney fails to state a claim for false imprisonment against two defendants; and because Sundra didn't interact with three defendants, her intentional-infliction-of-emotional-distress (IIED) claim against them is facially implausible.

I find that the court has subject-matter jurisdiction over the Hendersons' 42 U.S.C. § 1981 claim and allow it to proceed against all defendants. But because the Hendersons have failed to allege that they satisfied the statutory notice requirements before filing this lawsuit, I grant the motion to dismiss their claim under Title II of the Civil Rights Act against all defendants. I find that Rhodney's false-imprisonment claim is sufficiently pled. And finally, I grant the defendants' motion to dismiss Sundra's IIED claim against the three defendants that she didn't interact with, and I grant the Hendersons leave to separate their remaining IIED claims for clarity.

**Background**[1]

The Hendersons visited Las Vegas in June 2019 to celebrate their 34th wedding anniversary, and they reserved a hotel room at the Aria for four nights.[2]  They allege that they "regularly stayed at Aria" and other M Life properties and that they chose to stay at the Aria "because it was a[n] M Life franchise hotel."[3]  On the last night of their trip, Rhodney[4] was gambling in the Aria casino when he realized that he "mistakenly left his phone at a slot machine."[5]  He "asked a nearby white couple about his missing phone and whether they happened to see anything happen to it when he was gone."[6]  "The white couple's reaction seemed suspicious[,] as they patted themselves down, dug through a purse[,] and continued to stare at [Rhodney]."[7]  So Rhodney walked away and continued gambling, but he noticed the white couple "staring and making gestures," and he "approached them to tell them it wasn't a big [] deal[;] he just wanted his phone back."[8]  Rhodney then went to Aria security, and a female guard advised him "to check the office to see if anyone turned in his phone."[9]

While Rhodney and that guard were walking to the security office to look for the phone, Security Supervisor Beau Brink approached and "accused [Rhodney] of threatening a white

---

[1] This is a summary of the Hendersons' allegations and may not be construed as findings of fact.

[2] ECF No. 36 at ¶¶ 19–22.

[3] *Id.* at ¶¶ 18–19.

[4] For clarity, I refer to the individual Hendersons by their first names throughout this order.

[5] ECF No. 36 at ¶¶ 24–25.

[6] *Id.* at ¶ 26.

[7] *Id.*

[8] *Id.*

[9] *Id.* at ¶¶ 27–28.

couple on the casino floor and inquired whether [Rhodney] was a member at the hotel."[10]
Security Assistant Manager Mark Meija[11] and/or Brink asked Rhodney for identification, and
Rhodney asked why, responding that he was a member at the hotel.[12]  One or both of the
guards—Meija and Brink—told Rhodney "to leave the premises because he 'could be lying' and
protested that they 'had him on camera.'"[13]  They then asked Rhodney if he was staying at the
Aria and what is room number was; Rhodney responded that he was a guest but couldn't
remember his room number, so he gave his name instead.[14]  Brink "continued to berate"
Rhodney and told him that he would trespass him from the property.[15]

Other security guards arrived, and Meija trespassed Rhodney from the Aria.[16]  Without
warning, one of the guards grabbed Rhodney's arm and "tried to twist it behind" Rhodney's
back.[17]  Meija, Brink, and Security Investigator Youness Maroun then "immediately attacked
Rhodney and took him to the ground."[18]  Rhodney believes that he lost consciousness.[19]

---

[10] *Id.* at ¶¶ 29–30.

[11] The first-amended complaint refers to this defendant interchangeably as "Meija" and "Meijas." *Compare id.* at 1–2 *with id.* at 5.  And both sides occasionally refer to him as "Mejia." *See, e.g.*, ECF No. 45 at 1–2, 4, 8–9; ECF No. 49 at 2, 10–11.  I refer to him throughout this order as "Meija," as that is the name that appears in the operative complaint's caption, and I construe all references to "Meijas" and "Mejia" as "Meija."  In the future, the parties should take care to spell this defendant's name correctly.

[12] *Id.* at ¶ 31.

[13] *Id.* at ¶ 32.

[14] *Id.* at ¶ 33.

[15] *Id.* at ¶ 34.

[16] *Id.* at ¶¶ 35–36.

[17] *Id.* at ¶¶ 37–38.

[18] *Id.* at ¶ 39.  Rhodney alleges that additional, unidentified guards helped Meija, Brink, and Maroun. *Id.*

[19] *Id.* at ¶ 40.

Seemingly after he regained consciousness, he was handcuffed and then held at a holding facility "for hours," where a security guard who identified himself as a supervisor "repeatedly tried to get [Rhodney] to admit he did something wrong."[20]  While in the holding facility, Rhodney "was denied use of the telephone, even when he protested that he would like to call his attorney."[21]

A Las Vegas Metropolitan Police Department (Metro) officer, J. Garcia, "arrived to issue [Rhodney] a citation for trespassing and disorderly conduct."[22]  Rhodney's handcuffs were removed and fifteen minutes later, Rhodney was escorted to his hotel room by Garcia, Security Investigations Manager Jerald Hedrick, and Security Supervisor Roxana Martinez.[23]  Rhodney's wife Sundra was in the hotel room when the others arrived, and when she asked what happened, Hedrick "responded something to the effect of 'your husband knows' and instructed her to pack her things as quickly as possible."[24]  Martinez and Hedrick "would not allow [Sundra] to shut the door of the [h]otel room" while she packed her bags, and "[p]eople continued to walk by the door looking in the room as the guards told [Sundra that] she was also being trespassed from the property."[25]  Once the Hendersons had collected their belongings, Hedrick warned them "that 'it could get worse' and to 'just leave and don't come back.'"[26]  Sundra was then escorted to the hotel's checkout area, and Rhodney was escorted to the valet area to get his car.[27]  The defendants watched the Hendersons get into their car and waited for them to physically drive

---

[20] *Id.* at ¶¶ 41–42.

[21] *Id.* at ¶ 42.

[22] *Id.* at ¶ 43.

[23] *Id.* at ¶ 44, 46.

[24] *Id.* at ¶ 47.

[25] *Id.* at ¶ 48.

[26] *Id.* at ¶ 50.

[27] *Id.* at ¶ 51.

away from the hotel.[28]  The Hendersons filed this lawsuit in February 2021.[29]  The defendants filed a motion to dismiss, which I granted in part.[30]  The Hendersons amended their complaint seven months later, and the defendants now move to dismiss it.[31]

**Discussion**

**I.     Subject-matter jurisdiction**

**A.     Legal standard for Rule 12(b)(1) motion to dismiss**

Motions to dismiss under FRCP 12(b)(1) for lack of subject-matter jurisdiction "may be facial or factual."[32]  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[33]  But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[34]  The defendants mount a factual attack on subject-matter jurisdiction.[35]

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[36]  The court also "need not presume the truthfulness of the plaintiff's allegations."[37] When the moving party has successfully "converted the motion to dismiss into a factual motion

---

[28] *Id.* at ¶ 52.

[29] ECF No. 1 (complaint).

[30] ECF No. 11 (first motion to dismiss); ECF No. 33 (hearing transcript).

[31] ECF No. 36 (first-amended complaint); ECF No. 45 (second motion to dismiss).

[32] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[33] *Id.*

[34] *Id.*

[35] ECF No. 45 at 4–7.

[36] *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted).

[37] *Id.*

by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject[-]matter jurisdiction."[38]

But "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional" and warranted only in limited circumstances.[39]  The Ninth Circuit has cautioned that when the facts about "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction . . . depend[s] on the resolution of factual issues going to the merits of an action[,]"[40] then dismissal under FRCP 12(b)(1) is appropriate only when the claim that raises federal-question jurisdiction "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or such claim is wholly insubstantial and frivolous."[41]

### B.   The court has subject-matter jurisdiction over the Hendersons' § 1981 discrimination claim.

Although the defendants discuss the Hendersons' two discrimination claims—under 42 U.S.C. § 1981 and Title II of the Civil Rights Act—together,[42] the claims differ and should be addressed individually.  The defendants argue that this court lacks subject-matter jurisdiction over the Hendersons' § 1981 discrimination claim because the Hendersons don't allege that they "filed a complaint with the Nevada Equal Rights Commission before filing suit" and thus they "have failed to exhaust their administrative remedies."[43]  The Hendersons counter that "§ 1981

---

[38] *Id.* (internal quotation omitted).

[39] *Id.* (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983)).

[40] *Id.* (quoting *Sun Valley*, 711 F.2d at 139).

[41] *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)) (internal quotation marks omitted).

[42] *See* ECF No. 45 at 6–7.

[43] *Id.* at 6.

1    claims do not require administrative remedies to be exhausted prior to filing a private action for

2    damages."[44]

3          Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the

4    same right in every State and Territory to make and enforce contracts . . . and to the full and

5    equal benefits of all laws and proceedings for the security of persons and property as is enjoyed

6    by white citizens."[45]  Making and enforcing contracts "includes the making, performance,

7    modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

8    and conditions of the contractual relationship."[46]  Nothing in § 1981 requires that parties exhaust

9    any administrative remedies or fulfill any notice requirements before bringing a lawsuit.  And the

10   Ninth Circuit has stated that "§ 1981 has no such requirement."[47]  So because the Hendersons

11   weren't required to exhaust administrative remedies or provide notice to any entity before

12   bringing their § 1981 claim, I deny the defendants' motion to dismiss that claim.[48]

13          **C.    The court lacks subject-matter jurisdiction over the Title II claim.**

14          The Hendersons assert their Title II claim against all defendants, alleging that they were

15   denied "the full use and equal enjoyment of the services of a place of public accommodation on

16

17   _____

     [44] ECF No. 49 at 8–9.

18   [45] 42 U.S.C. § 1981(a).

19   [46] *Id.* § 1981(b).

20   [47] *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (citation omitted)
     (contrasting § 1981 with Title VII's exhaustion requirement in the employment context).

21   [48] The defendants also argue that the Hendersons' § 1981 claim is duplicative of their Title II
     claim, but I find that it is not.  As I discuss *infra*, unlike § 1981, Title II *does* require that a party

22   notify the relevant state entity before bringing a lawsuit.  So because the Hendersons haven't
     alleged that they took those required steps here, I dismiss their Title II claim.  Without that claim,

23   there is nothing for the § 1981 claim to duplicate.  But even if it is duplicative, it does not matter
     at this early stage because Federal Rule of Civil Procedure 8(d)(2) permits a plaintiff to plead in
     the alternative.

the basis of" race.[49]   The defendants argue that individual defendants cannot be held liable for

violating Title II and that this court lacks jurisdiction over this claim against Aria because the

Hendersons haven't alleged that they met the statutory notice requirement by notifying the

relevant entity of their claim.[50]   The Hendersons concede that they were required "to exhaust

administrative remedies such as filing a claim with the Equal Employment Opportunity

Commission (EEOC) or Nevada Equal Rights Commission (NERC)[] before seeking a private

action for damages" but contend that because they were entitled to receive a right-to-sue letter

from the EEOC, "it makes no difference whether [they] actually obtained it."[51]   The defendants

respond that the Hendersons "admittedly never reported their alleged public[-]accommodation[-]

discrimination claim to NERC" and that they "conflate reporting requirements regarding Title II

claims and Title VII claims."[52]

Title II, codified as 42 U.S.C. § 2000a, provides that "[a]ll persons shall be entitled to the

full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations of any place of public accommodation . . . without discrimination or

segregation on the ground of race, color, religion, or national origin."[53]   It applies to

"[e]stablishments affecting interstate commerce," such as "any inn, hotel, motel, or other

establishment which provides lodging to transient guests."[54]   And under 42 U.S.C. § 2000a-3,

"no civil action may be brought [for an alleged Title II violation] before the expiration of thirty

---

[49] ECF No. 36 at ¶ 90.

[50] ECF No. 45 at 6–7, n.3.

[51] ECF No. 49 at 6–9.

[52] ECF No. 52 at 3–5.

[53] 42 U.S.C. § 2000a.

[54] *Id.*

1  days after written notice of such alleged act has been given to the appropriate State or local

2  authority by registered mail or in person."[55]

3          But the district court's jurisdiction doesn't depend on whether the aggrieved party

4  exhausted administrative remedies—only whether notice was given to the appropriate

5  administrative entity.[56]  Nevertheless, the Hendersons were required to notify the Nevada state

6  agency that was created to protect civil rights: NERC.[57]  It is this notice requirement that is

7  missing from the complaint as the Hendersons haven't alleged that they provided it.  Because

8  they haven't alleged that they satisfied Title II's notice requirement, this court lacks subject-

9  matter jurisdiction over the Hendersons' Title II claim, so I grant the defendants' motion to

10  dismiss it.  And I do so without leave to amend because the plaintiffs have not demonstrated that

11  they could plead facts showing that they satisfied the notice requirement, so it appears that leave

12  to amend would be futile.

13  **II.    Only some of the Hendersons' other claims are sufficiently pled.**

14          **A.      Legal standard for Rule 12(b)(6) motion to dismiss**

15          District courts employ a two-step approach when evaluating a complaint's sufficiency on

16  a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual

17  allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

18  of truth.[58]  Mere recitals of a claim's elements, supported by only conclusory statements, are

19

20  _____

21  [55] *Id.* at § 2000a-3.

    [56] *Id.* at § 2000a-6 (district courts have jurisdiction over actions brought under Title II "without
22  regard to whether the aggrieved party shall have exhausted any administrative or other remedies
    that may be provided by law.").

23  [57] Nev. Rev. Stat. §§ 233.150, 651.110.

    [58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

insufficient.[59]   The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[60]   A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[61]   A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[62]

### B.   Rhodney's false-imprisonment claim against Martinez and Hedrick is sufficiently pled.

The defendants contend that Rhodney's false-imprisonment claim against Martinez and Hedrick fails because Rhodney doesn't allege that "Martinez or Hedrick confined [him] to fixed boundaries at any point in time."[63]   They argue that Rhodney's allegations are that Martinez and Hedrick merely "escort[ed Rhodney] to his hotel room to gather his belongings."[64]   The defendants provide the elements of a false-imprisonment claim in Nevada, and that citation is the only authority they present.[65]   Rhodney rebuts the defendants' argument, asserting that once his handcuffs were removed in the holding facility, he was escorted to his hotel room by Martinez and Hedrick and was "still confined with their authority of presence[] and still not free to

---

[59] *Id.*

[60] *Id.* at 679.

[61] *Id.*

[62] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[63] ECF No. 45 at 8.

[64] *Id.*

[65] *See id.* at 7–8 (citing *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981)).

leave."[66]  He further contends that they "confin[ed] him to a restricted area accompanied by

verbal threats and an intimidating physical presence."[67]

    The elements of Nevada false imprisonment are: (1) an act intending to confine a person

"within boundaries fixed by the actor," (2) the person's resulting confinement, and (3) the

person's consciousness of or harm from it.[68]  Although they provide the correct elements of false

imprisonment, the defendants misapply them.  They argue that the first element is not met

because there were no fixed boundaries—Rhodney was no longer in the holding facility and was

instead being escorted through the hotel to his room.  But the relevant first-element inquiry is not

whether the boundaries were fixed but whether the plaintiff was "restrain[ed] of [his] liberty

without any sufficient cause."[69]  And here, Rhodney has pled facts to demonstrate that restraint.

He alleges that Martinez and Hedrick escorted him to his hotel room after his handcuffs were

removed in the holding facility,[70] and a Metro officer also joined them.  Although "[i]t is

generally acknowledged that submission to the mere verbal direction of another, unaccompanied

by force or threats of any character, does not constitute false imprisonment,"[71] Rhodney has

sufficiently alleged that such force or threats were present here.  I therefore deny the defendants'

motion to dismiss Rhodney's false-imprisonment claim against Martinez and Hedrick.

---

[66] ECF No. 49 at 10 (citation omitted).

[67] *Id.*

[68] *Hernandez*, 634 P.2d at 671 (citing Restatement (Second of Torts § 35 (1965)) (cleaned up).

[69] *Lerner Shops of Nev., Inc. v. Marin*, 423 P.2d 398, 400 (Nev. 1967) (citation omitted).

[70] ECF No. 36 at ¶ 46.

[71] *Lerner Shops of Nev., Inc.*, 423 P.2d at 400 (citation omitted).

### C.    I grant the Hendersons leave to amend their first-amended complaint to separate Sundra's IIED claim from Rhodney's IIED claim.

The Hendersons' first-amended complaint lists their third claim as IIED "on behalf of plaintiffs collectively [against] all defendants."[72]  The defendants move to dismiss Sundra's IIED claim against Meija, Brink, and Maroun because the Hendersons "do not allege that [Sundra] had any interaction whatsoever with Meija, Brink[,] or Maroun during the incident" and therefore those defendants "could not have engaged in 'extreme or outrageous' conduct toward her."[73]  The Hendersons agree that "[Rhodney,] not [Sundra,] has an [IIED] claim against . . . Mejia [sic], Brink[,] or Maroun."[74]  Because the parties seemingly consent to dismissal of Sundra's IIED claim against those three defendants, I grant the defendants' motion on this portion of the claim.  For clarity's sake and at the Hendersons' request, I grant the Hendersons leave to file a second-amended complaint to separate their IIED claims from one another because each of the Hendersons' claims are against different sets of defendants.  If they choose to amend their complaint, they should clearly indicate that Rhodney's IIED claim is against all defendants, while Sundra's is against Aria, Hedrick, and Martinez only.

---

[72] ECF No. 36 at 12–13.

[73] ECF No. 45 at 8.

[74] ECF No. 49 at 11.

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 45] is GRANTED in part and DENIED in part**.  The Hendersons' Title II claims against all defendants are DISMISSED, as is Sundra Henderson's IIED claim against Meija, Brink, and Maroun.  This case proceeds on the following claims:

- Both Hendersons' claims for discrimination under 42 U.S.C. § 1981 against all defendants;

- Rhodney Henderson's false-imprisonment claim against all defendants;

- Rhodney Henderson's IIED claim against all defendants;

- Sundra Henderson's IIED claim against Aria, Hedrick, and Martinez;

- Rhodney Henderson's battery claim against Aria, Meija, Brink, and Maroun; and

- Both Hendersons' negligence claims against all defendants.

The Hendersons have until **June 10, 2022**, to file a second-amended complaint separating Rhodney's IIED claim (against all defendants) from Sundra's IIED claim (against Aria, Hedrick, and Martinez only).  They must not make any other changes to their pleading.  And if the Hendersons fail to file a second-amended complaint by that date, this case will proceed on the above claims only with the first-amended complaint [ECF No. 36] as the operative pleading.

_____
U.S. District Judge Jennifer A. Dorsey
May 31, 2022

13