UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RHODNEY HENDERSON, et al.,<br><br>    Plaintiff(s),<br><br>v.<br><br>ARIA RESORT & CASINO HOLDINGS, LLC, et al.,<br><br>    Defendant(s). | Case No. 2:21-cv-00280-JAD-NJK<br><br>**ORDER**<br><br>[Docket No. 86] |

Pending before the Court is Plaintiffs' motion to substitute their expert. Docket No. 86. Defendants filed a response in opposition. Docket No. 92. The Court does not require a reply. The motion is properly resolved without a hearing. Local Rule 78-1. For the reasons discussed below, the motion to substitute Plaintiffs' expert is **GRANTED**.

**I.    BACKGROUND**

This case arises out of an incident during Plaintiffs' stay at the Aria Resort and Casino in June 2019. *See* Second Amended Complaint (Docket No. 61) at ¶ 19. Plaintiffs bring a racial discrimination suit on the grounds that they were wrongfully trespassed and mistreated because of their race.[1]

In September 2022, Plaintiffs retained Robert Woolsey as an expert in this case. Docket No. 86 at 11. On February 13, 2023, Plaintiffs timely disclosed Robert Woolsey as their expert in this matter. *Id.* at 12. On April 6, 2023, Woolsey was deposed. *Id.* On April 13, 2023, Defendants subpoenaed Woolsey's current employer for the production of documents. *Id.* Later that same day, Woolsey informed Plaintiffs' counsel that he was terminating his expert services in this matter. *Id.* On April 21, 2023, Plaintiffs filed a motion to reopen the pertinent deadlines to obtain a substitute expert. Docket No. 86. That is the matter currently before the Court.

---

[1] A fulsome overview of the factual allegations has been provided elsewhere by United States District Judge Jennifer A. Dorsey. Docket No. 60 at 2-5.

1

## II. STANDARDS

"In determining whether to allow a substitute expert, courts have frequently relied on Federal Rule of Civil Procedure 16(b), and treated the request for a substitute expert as a *de facto* attempt to alter the scheduling order and enlarge the discovery period." *United States ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *1 (D. Nev. Apr. 6, 2015) (quoting *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Co.*, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010)); *see also Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 308 F.R.D. 649, 652 (S.D. Cal. 2015). Relief from case management deadlines under Rule 16(b) turns on the "good cause" standard, which "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). In particular, courts look to whether the deadline set in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reasons for seeking modification. *Id.* "If that party was not diligent, the inquiry should end." *Id.* The party seeking amendment bears the burden of establishing diligence. *See Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019); *see also Morgal v. Maricopa County Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012).

A motion for relief from expired case management deadlines requires an additional showing of excusable neglect. *See Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017); *see also* Local Rule 26-3. The excusable neglect analysis is guided by factors that include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Branch Banking*, 871 F.3d at 765. The party seeking amendment bears the burden of establishing excusable neglect. *See id.*

In the context of a motion to substitute an expert, courts are mindful that the purpose "is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert." *Agate Steel*, 2015 WL 1546717, at *2. Moreover, to minimize prejudice to the opposing party, courts generally limit the scope of the testimony that

may be given by the substitute expert to opinions that are "substantially similar" to those of the predecessor expert. *Id.*

District courts possess broad discretion to manage the discovery process in the interests of dispatch and fairness. *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 361 (D. Nev. 2019) (quoting *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010)).

**III.    ANALYSIS**

Plaintiffs argue that the circumstances justify reopening the expert disclosure deadlines so that they can substitute their expert. In particular, Plaintiffs contend that they timely disclosed Woolsey, that his subsequent withdrawal from the case was unanticipated, that they promptly addressed the issue through the instant motion once he did withdraw, and that prejudice to Defendants would be minimal given that the core of the rebuttal report can remain unchanged and the delay should not cause disruption to the proceedings. *See* Docket No. 86 at 6-8. Defendants counter that the conflict of interest that likely led to Woolsey's withdrawal could have been discovered months earlier, that Plaintiffs took a knowing risk of hiring him despite a potential conflict, that Defendants would be prejudiced by the substitution, and that the substitution will delay proceedings. *See, e.g.*, Docket No. 92 at 7-8, 10-12.[2]

The Court agrees with Plaintiffs that both good cause and excusable neglect have been established to substitute their expert. With respect to diligence, Plaintiffs had been in discussions with Woolsey since last autumn and they timely disclosed him as their expert. Docket No. 86 at 11. Throughout this period, Woolsey gave no indication that he would bail on Plaintiffs. *See id.* at 11-13. Upon Defendants seeking documents from his former employer, however, Woolsey abruptly terminated his services in this case on the discovery cutoff. *Id.* at 12.[3] Moreover, Plaintiffs then sought relief from this Court to substitute their expert a mere eight days later. *See*

---

[2] Defendants also argue that Woolsey was a poor witness at his deposition. *See id.* at 8-10.

[3] Defendants argue at some length that they believe Woolsey's withdrawal was not unforeseeable since any conflict of interest could have been identified earlier in the case. *See* Docket No. 92 at 11-12. The Court is persuaded by Plaintiffs' counsel's attestations to the contrary. Docket No. 86 at 11-13.

*id.* Plaintiffs have established diligence and good cause exists to reopen the expert disclosure deadline so that they may substitute their expert.

With respect to excusable neglect, the Court is most mindful of the potential for prejudice to Defendants. Plaintiffs acknowledge that their request will create some potential of prejudice given that Defendants have already expended resources on their own rebuttal expert, in addition to expending resources deposing Woolsey. Docket No. 86 at 7. Defendants argue that prejudice should preclude the relief requested both based on the costs incurred already, as well as the potential that any new expect would have a preview of the rebuttal. Docket No. 92 at 11-12. Although there is potential for prejudice, the Court can sufficiently ameliorate that risk by requiring that the new expert be limited to opinions that are substantially similar to Woolsey's opinions. *Agate Steel*, 2015 WL 1546717, at *2. With that caveat, the additional expenses in allowing the expert substitution should be relatively minimal and are not of a sufficiently prejudicial nature to warrant denial of the request. *See, e.g.*, *Kaepplinger v. Michelotti*, 2021 WL 2633312, at *8 (N.D. Ill. June 25, 2021); *Synygy, Inc. v. ZS Assocs., Inc.*, 2015 WL 4578807, at *4 (E.D. Penn. July 30, 2015). Such a limitation also negates Defendants' concern that the existing rebuttal report may work to Plaintiffs' advantage. In addition, the other excusable neglect considerations point toward allowing the substitution. The length of delay is moderate and its potential to impact proceedings is low given that the deadline for dispositive motions has already been extended. *See* Docket No. 88.[4] Moreover, there is good reason for the delay and Plaintiffs have acted in good faith.

The Court finds that there is good cause and excusable neglect to reopen the expert opinion deadlines to allow Plaintiffs to substitute their expert. This ruling is subject to the caveat that the substituted opinions must be substantially similar to Woolsey's opinions.

---

[4] Defendants make much of the fact that the discovery cutoff was meant to be firm. *See, e.g.*, Docket No. 92 at 12. Such reliance on the Court's admonitions is puzzling given that Defendants themselves agreed (without obtaining judicial approval) to engage in discovery after that very same firm discovery cutoff. *Cf. Prodox, LLC v. Professional Doc. Servs., Inc.*, 341 F.R.D. 679, 685-86 & n.11 (D. Nev. 2022). At any rate, the withdrawal of Woolsey as Plaintiffs' expert was not anticipated previously and Plaintiffs have shown that the circumstances justify reopening the discovery cutoff.

## IV. CONCLUSION

Accordingly, for the reasons discussed above, the motion to substitute Plaintiffs' expert is **GRANTED**. Counsel must promptly confer on a schedule for expert disclosures and depositions, and must make all reasonable efforts to create a schedule that does not require adjustment to the remaining case management deadlines. A stipulation with that schedule must be filed by May 15, 2023.

IT IS SO ORDERED.

Dated: May 9, 2023

_____
Nancy J. Koppe
United States Magistrate Judge